| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM & ORDER** |
| ROSHODE JAWADE CHAPMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Suppress (Doc. No. 24). For the reasons set forth below, the Court will deny the motion.

## I.    BACKGROUND

The Court finds the following facts based on the bodycam video footage, the documentary evidence submitted in relation to the Motion to Suppress, and the officer testimony provided during the Court's May 27, 2026 hearing on this Motion.

On February 24, 2024, the Hickory Police Department and North Carolina's Alcohol Law Enforcement (ALE) division were conducting a joint operation. The operation centered on reducing the number of violent incidents at the Gateway Bar & Pub in Hickory, North Carolina. Around 1:30 a.m., officers observed a silver Kia Sportage leaving the parking lot. Upon running the plate through law enforcement databases, officers learned that the vehicle was registered to Zsakeia Witherspoon, that the tag was expired, and that the vehicle had an inspection violation. Officers also observed that the taillight appeared to be broken. Mr. Chapman was the front-seat passenger in the vehicle.

Officers initiated a traffic stop, and the Kia pulled over without any issues. Officer McKee approached the vehicle and began to interact with Witherspoon. He explained the purpose of the stop and asked for her identification. An ALE special agent approached the passenger side and began to speak with Defendant. Witherspoon could not locate her identification, and after approximately two minutes, she showed Officer McKee a picture of her driver's license on her phone.

During this time, Officer McKee observed a strong odor of marijuana coming from the vehicle. He asked Witherspoon and Defendant, "Be honest with me, okay, how much marijuana do y'all have?" Witherspoon responded, "I had a blunt earlier." When asked where it was, Witherspoon indicated toward the console, and Defendant picked up the blunt from the vehicle's ashtray and reached toward the driver's side window. It appears from the bodycam video that Defendant handed the blunt to Officer McKee, while Witherspoon reached toward and may have touched the blunt as Defendant was handing it toward the window. Witherspoon stated, "I smoked earlier."

Both occupants were ordered out of the Kia and frisked for safety. Officer McKee searched Witherspoon's person, and other officers patted down Defendant. Both occupants were then asked to stand at the front of a patrol car. Officers then searched the vehicle. They found two loaded firearms in the glove box, apparent marijuana residue, and an additional blunt between the driver's seat and console.

Officers then began to detain Defendant. He fled on foot. Officers took him to the ground and handcuffed him a short distance away. Officers searched Defendant

2

incident to arrest and found:

- cash;
- a clear plastic baggie containing a substance officers suspected was crack cocaine, which was underneath Defendant when officers took him to the ground; and
- three blue pills in one of his pockets.

While on scene, Witherspoon stated that she did not own any guns and knew nothing about the firearms in her vehicle.

Officer McKee transported Defendant to the Hickory Police Department. Officers read Defendant his *Miranda* rights, which he waived. Defendant then made statements confirming his possession of the firearms and the suspected crack cocaine.

## II.  LEGAL STANDARD

The Fourth Amendment to the United States Constitution prohibits the federal government from violating "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) (quoting U.S. Const. amend IV); *see also Elkins v. United States*, 364 U.S. 206, 213 (1960) (extending the Fourth Amendment via the Fourteenth Amendment to state law enforcement actions). "A traffic stop constitutes a 'seizure' under the Fourth Amendment and is thus subject to a reasonableness requirement." *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996).

The Fourth Circuit applies the two-prong test from *Terry v. Ohio*, 392 U.S. 1, 88 (1968), to determine the constitutionality of a traffic stop. *United States v. Vaughan*, 700 F.3d 705, 709 (4th Cir. 2012). The first question is whether the officer

had a legitimate basis for the traffic stop. *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992). The second considers whether the duration and scope of the stop were "sufficiently limited." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

"Police officers do not need a warrant to search an automobile if they have probable cause to believe it contains evidence of criminal activity." *United States v. Patiutka*, 804 F.3d 684, 690 (4th Cir. 2015) (citing *United States v. Ross*, 456 U.S. 798, 809 (1982)). "[P]robable cause turns on a 'totality-of-the-circumstances analysis' and requires 'a practical, common-sense decision whether ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Gondres-Medrano*, 3 F.4th 708, 714 (4th Cir. 2021) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[O]nce police have probable cause, they may search 'every part of the vehicle and its contents that may conceal the object of the search.'" *United States v. Kelly*, 592 F.3d 586, 590 (4th Cir. 2010) (quoting *Ross*, 456 U.S. at 825).

## III.  DISCUSSION

Defendant does not contest the validity of the traffic stop. He instead challenges the scope of the stop under *Terry*'s second prong. Defendant argues that Officer McKee's statement that he smelled marijuana coming from the vehicle lacks credibility because (1) other officers do not corroborate this odor in their reports, and (2) Officer McKee does not make a direct statement about an "odor" or "smell" of marijuana on the bodycam video.  Defendant further argues that Officer McKee's report of the incident states that Witherspoon handed Officer McKee the blunt, when it appears instead from the video that Defendant handed him the blunt. Defendant

4

then argues that Officer McKee's statement regarding the odor of marijuana is unreliable and should be disregarded. From there, Defendant argues that the scope of the vehicle stop was unconstitutional, and any further search of the vehicle and Defendant were also unconstitutional.

Officer McKee testified before the Court during the hearing on Defendant's Motion to Suppress on May 27, 2026. McKee confirmed under oath that he smelled an odor of marijuana coming from the vehicle during the incident in question. The Court observed Officer McKee's testimony and found him credible. Further, Officer McKee's question to Witherspoon naturally implied the fact that he smelled marijuana when he asked her, "Be honest with me, okay, how much marijuana do y'all have?" After Witherspoon admitted she had smoked a blunt, Officer McKee asked where it was. Defendant immediately reached for a blunt and handed it to Officer McKee. At this point, officers not only had probable cause to search the automobile based on the smell of marijuana. They also had observed contraband inside the vehicle, further warranting a search of the entire car.

Defendant argued in brief and at the hearing that the legalization of CBD and other substances in North Carolina makes it impossible to distinguish between illegal marijuana and legal products derived from the same plant. The Fourt Circuit, however, has made clear that the odor of marijuana alone can provide probable cause for searching an entire vehicle. *See United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place.") (citing

5

*United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002)). The smell of marijuana certainly doesn't guarantee its presence. But under the probable cause inquiry, it can provide a fair probability that marijuana is present. *See Gates*, 462 U.S. at 238 (probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place.").

Here, however, we need not rely on the odor of marijuana alone. The facts of this case involve an admission of the presence of marijuana and a seizure of marijuana that was in the vehicle at the time of the traffic stop. The traffic stop was fewer than three minutes old when the marijuana was discovered. The Court finds both the scope and duration of the stop were reasonable under the circumstances, especially where Officer McKee was waiting for Witherspoon to look for her driver's license for most of that period. The simple question, "how much marijuana do y'all have?" did not somehow turn this short period that was limited in scope into an unconstitutional traffic stop. The *Terry* stop was legal, and during that stop, officers obtained probable cause to search the vehicle and Defendant.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Suppress (Doc. No. 24) is **DENIED.**

**SO ORDERED.**

Signed: May 28, 2026

Matthew E. Orso
United States District Judge

6